## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

JAMES WILLOBY,                          )
                                        )
        Plaintiff,                 )
                                        )
v.                                      )
                                        )    **Case No. 17-cv-01355**
MASON CITY, ILLINOIS, BRUCE             )
LOWE, SCOTT FRANCIS, JOHN               )
DODSON, and JIM MILLER,                 )
                                        )
        Defendants.                )

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Now before the Court is Defendants' Motion for Summary
Judgment (d/e 71).  For the reasons set forth below, the motion is
GRANTED IN PART and DENIED IN PART.

## I. INTRODUCTION

On August 4, 2017, Plaintiff James Willoby filed a Complaint
against Mason City, Illinois (the City), and several elected officials,
alleging claims pursuant to 42 U.S.C. § 1983 based on a violation of
Plaintiff's rights under the First Amendment of the United States
Constitution.  Plaintiff's Complaint also asserts a retaliatory
discharge claim under Illinois law against the City.  The Complaint

alleges that Plaintiff was laid off as a police officer with the Mason City Police Department because of constitutionally protected statements he made to Pete Bowers and Defendants Bruce Lowe and Scott Francis. On Plaintiff's motion, Mike Kirby was dismissed as a defendant in October 2017.

Defendants—Lowe, Francis, John Dodson, Jim Miller, and the City—now move for summary judgment. Defendants argue that Plaintiff's speech was made pursuant to his official duties as a police officer and is therefore not protected under the First Amendment. Defendants also contend that the undisputed facts establish that Plaintiff was fired because of budget constraints, not his statements to Bowers, Lowe, and Francis. Defendants Lowe, Francis, Dodson, and Miller also argue that they are entitled to qualified immunity.

## II. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over Plaintiff's § 1983 claims because they arise under the United States Constitution and are brought pursuant to a federal statute. <u>See</u> 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States."). Because Plaintiff's state law claim against the City is related to Plaintiff's § 1983 claims such that the claims form part of the same case or controversy, the Court has supplemental jurisdiction over the state law claim. 28 U.S.C § 1367(a).

The events giving rise to Plaintiff's claims occurred in Mason County, Illinois, which is located within the boundaries of the Central District of Illinois. Venue is therefore proper in this district. See 28 U.S.C. § 1391(b)(2) (stating that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

### III. FACTS

Many of the facts asserted by the parties are in dispute. In setting forth the facts below, the Court construes the facts in the light most favorable to Plaintiff and draws all reasonable inferences in Plaintiff's favor. See Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008). However, the Court's recitation of the facts does not include any inadmissible hearsay statements. See Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009).

In December 2016, Plaintiff was hired as a probationary police officer with the Mason City Police Department (the Department).

After being hired, Plaintiff worked as one of five full-time officers for the Department. In the approximately 20 years before Plaintiff was hired, the Department employed five full-time officers. In his time as a police officer in Mason City, Plaintiff made eight DUI arrests. From 2012 to 2016, the other Mason City police officers made 11 DUI arrests. Unbeknownst to Plaintiff when he began working for the Department, the citizens and City Council of Mason City had become accustomed to the DUI laws not being enforced after years of non-enforcement.

Plaintiff's enforcement of the DUI laws was not popular with some Mason City residents, particularly those who owned bars in Mason City. Pete Bowers, then the mayor of Mason City, went to each bar in Mason City to talk to the bar owners, who were upset about Plaintiff's enforcement of Illinois' DUI laws. The bar owners told Bowers that Plaintiff's actions were chasing away their customers and hurting their business. Bruce Lowe, who became the mayor of Mason City after Bowers left office, was in a bar when the owner complained to the whole establishment that Plaintiff was hurting business. Lowe received other complaints from bar owners about Plaintiff's DUI arrests, which were perceived as hurting

business.  Alderman John Dodson was friends with Teresa Snyder, a bar owner who complained about Plaintiff while Dodson was in Snyder's bar.  Lowe, whose Facebook friends included Snyder and Darren Smith, saw negative Facebook posts about Plaintiff, including posts made by Snyder.

In addition to the complaints about DUI enforcement, several incidents related to Plaintiff's enforcement of DUI laws occurred during Plaintiff's employment as a police officer in Mason City. After arresting a bartender for driving under the influence, the bartender's employer showed up at the traffic stop wanting Plaintiff to let the bartender go.  After a crowd formed, Plaintiff had to call for backup.

During another DUI arrest, the suspect told Plaintiff to call other police officers employed by the Mason City Police Department. The suspect claimed that these other officers would let the suspect go.  The wife of a bar owner showed up and told Plaintiff that she knew Plaintiff was the new officer and demanded that Plaintiff let the suspect go because "this is Mason City."

Another incident involved bar owner Darren Smith.  Smith took pictures of Plaintiff's squad car, pointed his finger in Plaintiff's

face, and told Plaintiff that Smith had not heard any call requiring Plaintiff's presence and was checking to make sure that Plaintiff was not dead.

On April 25, 2017, Plaintiff, while on duty, went to speak to the alderman after a Mason City City Council meeting because of the recent incidents involving Mason City residents. Plaintiff met with Scott Francis, the chairman of the City Council's Police Committee, and Pete Bowers, the mayor of Mason City at that time, and discussed the recent incident involving Darren Smith. Francis indicated that he already knew about the incident because people had been texting him about it.

Plaintiff indicated that the situation was getting ridiculous and stated, "All I'm trying to do out here is do my job." Plaintiff also stated that he had not done anything illegal and that he knew how to keep people safe. Plaintiff said that although residents were not happy with how Plaintiff was enforcing the DUI laws, Plaintiff was doing the right thing. Plaintiff also said that members of the City Council needed to stand behind Plaintiff. Francis and Bowers both expressed support for Plaintiff's role and his performance.

Several days after Plaintiff's discussion with Bowers and Francis, Plaintiff met with Bowers and Assistant Police Chief Billy Williams. Williams told Plaintiff to slow down on DUI enforcement because bar owners were complaining.

Dodson has denied that Plaintiff's DUI arrests were discussed in Committee. However, on May 18, 2017, Lowe and the alderman on the Police Committee, Francis, Dodson, and Jim Miller, went into executive session to discuss Plaintiff. After a discussion of Plaintiff's work history, Francis mentioned an establishment that had closed its doors for three days due to an excessive number of DUIs. Either Dodson or Miller stated his concerns about a tax revenue shortage. Next came a discussion about the potential ramifications if Plaintiff found out there was a plan to terminate his employment and began citing people for driving under the influence as retaliation. Francis suggested that, if everyone still wanted to fire Plaintiff, that the termination occur right before a new police chief was hired.

On June 12, 2017, Plaintiff, while on duty, spoke with Lowe on Lowe's front porch. The conversation took place shortly after Lowe had become mayor. Plaintiff's intent in speaking with Lowe

was to educate Lowe on the role of the police and get Lowe to understand why the Mason City police officers do what they do. Plaintiff stated that DUI laws were important and in place for a reason and that the City needed to better inform the public that the police enforce laws to keep the community safe. Lowe responded by stating that the bars make Mason City a lot of money and that everyone needed to be kept happy. Plaintiff responded to Lowe by stating that sacrificing people's safety for political reasons was not an option.

After hearing rumors about one of his employees being fired, Police Chief Adam Anderson told the City Council a week before Plaintiff was fired that the City needed to retain Plaintiff as a police officer. When Chief Anderson brought up reports that Plaintiff was going to be fired as a result of Plaintiff's enforcement of the DUI laws, the City Council indicated that Plaintiff's termination was due to money constraints. Anderson left this meeting with the City Council thinking that Plaintiff would remain an officer with the Mason City Police Department, based in part on a statement by Lowe that Mason City would continue to have five police officers.

On June 19, 2017, Plaintiff was laid off from his position as a Mason City police officer pursuant to a vote by the City Council. On that date, the City Council was comprised of five individuals: Scott Francis, John Dodson, Jim Miller, Gerald Mahin, and Dan Mason. The vote to lay off Plaintiff was three to two, with Francis, Dodson, and Miller voting in favor. Lowe did not vote on the motion to lay off Plaintiff.

Since Plaintiff was laid off, his position has not been filled, leaving the Department with four full-time officers. Based on discussions with the City Council about how many police officers were needed in Mason City and problems caused by Plaintiff's termination, Chief Anderson does not believe that Plaintiff was fired as a result of Mason City's finances. Francis told Chief Anderson that Plaintiff's lawsuit would be defeated if Mason City waited to hire a fifth full-time police officer and that the City Council did not care how much overtime the Department incurred in the meantime. Chief Anderson also informed Plaintiff that the amount being spent on police officer salaries was no different, and perhaps a bit higher, than when Plaintiff was employed. Alderman Mason is also skeptical of the idea that Plaintiff was fired due to budget concerns,

as the City Council wanted to purchase a new police car around that time.

When Bowers left office as mayor in May 2017, the City was not facing any budget issues. At the beginning of December 2016, the month Plaintiff was hired as a Mason City police officer, the Mason City general fund had a balance of $399,433.13. From December 2016 to June 2017, the balance of the general fund decreased each month. At the beginning of July 2017, the general fund's balance was $109,050.39.

However, the general fund receives disbursements from the County Treasurer in July and September of each year. After the July 2017 disbursement was made, the general fund's balance at the end of that month was $286,535.66. Similar disbursements resulted in an increase to the balance of the general fund from $225,037.91 at the beginning of July 2016 to $337,305.30 at the end of July 2016 and $151,235.84 at the beginning of July 2018 to $269,799.26 at the end of July 2018.

## IV. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The movant bears the initial responsibility of informing the Court of

the basis for the motion and identifying the evidence the movant

believes demonstrates the absence of any genuine dispute of

material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A

genuine dispute of material fact exists if a reasonable trier of fact

could find in favor of the nonmoving party. Carroll v. Lynch, 698

F.3d 561, 564 (7th Cir. 2012). When ruling on a motion for

summary judgment, the Court must construe facts in the light most

favorable to the nonmoving party and draw all reasonable

inferences in the nonmoving party's favor. Woodruff, 542 F.3d at

550. A district court may not make credibility determinations at

the summary judgment stage. Estate of Perry v. Wenzel, 872 F.3d

439, 454 (7th Cir. 2017).

A party opposing a summary judgment motion may not rely

solely upon the allegations in his pleading, but must "set forth

specific facts showing that there is a genuine issue for trial."

Widmar v. Sun Chem. Corp., 772 F.3d 457, 460 (7th Cir. 2014).

Neither assertions at "a high level of generality" nor "conclusory

statements not grounded in specific facts are [] enough to stave off

summary judgment." <u>King v. Ford Motor Co.</u>, 872 F.3d 833, 840-41 (7th Cir. 2017) (internal quotation marks omitted).  Similarly, speculation or hunches about a defendant's motives cannot be used to manufacture a genuine dispute of material fact.  <u>Springer v. Durflinger</u>, 518 F.3d 479, 484 (7th Cir. 2008).  "A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."  <u>Gunville</u>, 583 F.3d at 985.

## V. ANALYSIS

To prove a First Amendment retaliation claim, a public employee must show that (1) his speech is constitutionally protected, (2) the speech was a cause of his employer's action, and (3) he suffered an adverse employment action.  <u>Kristofek v. Vill. of Orland Hills</u>, 832 F.3d 785, 792 (7th Cir. 2016).  In addition, to hold a municipality liable under § 1983 for a constitutional violation, the employee must show that the violation was caused by "(1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority."  <u>Id.</u> (internal quotation marks omitted).  Defendants do not dispute that Plaintiff's employment with the Mason City Police Department was terminated

or that the decision to terminate Plaintiff was made by municipal agents with final policymaking authority. Accordingly, the Court's analysis will focus on whether Plaintiff's speech is constitutionally protected and whether that speech was a cause of the decision to terminate Plaintiff's employment. Plaintiff's § 1983 claims are based on his April 2017 statements to Francis and Bowers and his June 2017 statements to Lowe.

## A. Plaintiff's April 2017 Statements to Alderman Scott Francis and Mayor Pete Bowers and Plaintiff's June 2017 Statements to Mayor Bruce Lowe Are Protected Under the First Amendment.

For a public employee's speech to be protected under the First Amendment, (1) the employee must speak as a private citizen, (2) the speech must address a matter of public concern, and (3) the employee's interest in expressing the speech cannot be outweighed by the state's interest in promoting effective and efficient public service. <u>Davis v. City of Chicago</u>, 889 F.3d 842, 845 (7th Cir. 2018) (internal quotation marks omitted). Whether speech is constitutionally protected presents a question of law. <u>Kubiak</u>, 810 F.3d at 481.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 421 (2006). "[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." <u>Lane v. Franks</u>, 573 U.S. 228, 240 (2014). The critical question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." <u>Id.</u> Determining a public employee's official duties requires a practical inquiry that goes beyond a written job description. <u>Davis</u>, 889 F.3d at 845. A public employee's duties "include both formal job requirements and the employer's real rules and expectations." <u>Id.</u> (internal quotation marks omitted).

Applying these principles, the Court concludes that Plaintiff's statements to Bowers and Francis in April 2017 and Plaintiff's statements to Lowe in June 2017 were made as a private citizen,

not a public employee. The parties devote little time to discussing Plaintiff's official duties as a Mason City police officer. Defendants contend that Plaintiff's job duties included "the enforcement of law" as well as "policing, DUI enforcement, and public education." Memorandum, at 7-8.

The duties listed by Defendants are undoubtedly those of a municipal police officer. But nowhere have Defendants argued that Plaintiff, a probationary officer, was required to meet and confer with Mason City's elected officials about the need to enforce the DUI laws to keep the public safe or about complaints stemming from Plaintiff's enforcement of the law. Nor do the facts suggest that Plaintiff was required to do so. Plaintiff had superiors within the Mason City Police Department to whom he could report if citizens had concerns about his job performance. See Response (d/e 75), at 30. And Defendants acknowledge that Plaintiff's meetings with Bowers, Francis, and Lowe did not occur at the direction of any of Plaintiff's superiors at the Department (or, for that matter, at the direction of Bowers, Francis, or Lowe). With no evidence that Plaintiff's official duties as a Mason City police officer included addressing citizen complaints about his job performance with

Mason City's elected officials or educating those officials about the need to enforce Illinois' DUI laws, the Court, construing the facts in the light most favorable to Plaintiff, finds that Plaintiff's statements to Bowers and Francis in April 2017 and his statements to Lowe in June 2017 were made as a private citizen, not a public employee.

In arguing that Plaintiff's statements were made as a public employee, Defendants note that the statements were made to two mayors and a City Council member who served as the chairman of the Police Committee.  Memorandum (d/e 72), at 7; Reply (d/e 76), at 11.  However, the audience of the employee's speech is not dispositive as to whether an individual speaks as a citizen or a public employee.  See Callahan v. Fermon, 526 F.3d 1040, 1044 (7th Cir. 2008) ("[S]peech may be protected even if it is made by an employee at his place of work to his coworkers.").

Defendants also note that Plaintiff's discussions with Bowers, Lowe, and Francis regarded Plaintiff's job as a Mason City police officer.  Memorandum, at 7.  But the subject matter of a public employee's speech, like the audience of the speech, is not dispositive as to whether the speech is protected under the First Amendment.  See Callahan, 526 F.3d at 1044 ("[T]he First

Amendment protects some expressions related to the speaker's job.") (internal quotation marks omitted).  The controlling factor is whether the speech owes its existence to a public employee's professional responsibilities."  Id.

The primary case on which Defendants rely in arguing that Plaintiff's speech is not constitutionally protected, <u>Kubiak v. City of Chicago</u>, is distinguishable.  In <u>Kubiak</u>, the plaintiff, a police officer assigned to the Chicago Police Department's Office of News Affairs (ONA), complained to her supervising lieutenant and the director of the ONA about another officer who had verbally assaulted the plaintiff.  810 F.3d at 479.  The plaintiff subsequently submitted a memorandum to her lieutenant, leading to an investigation by the Chicago Police Department's Internal Affairs Division (IAD), and gave a statement to IAD investigators.  <u>Id.</u> at 480.  Within days of the plaintiff's IAD complaint being "sustained," the plaintiff was reassigned to a beat officer position in a dangerous Chicago neighborhood.  <u>Id.</u>  The plaintiff filed suit, alleging retaliation in violation of the First Amendment pursuant to 28 U.S.C. § 1983.  <u>Id.</u>

In holding that the plaintiff's speech was not constitutionally protected, the Seventh Circuit noted that "an employee who is

verbally assaulted by a colleague would be expected to report the inappropriate behavior to a supervisor." Id. at 481-82. Also relevant was that the plaintiff's speech "was directed to her supervisor, the director of her office, and the IAD." Id. at 482. Based on these facts, the Seventh Circuit concluded that the plaintiff's speech "was intimately connected with her professional duties," which included "protecting the public from harm." Id.

In contrast, this case involves a police officer, Plaintiff, who went outside his department to discuss issues related to how Plaintiff was enforcing the DUI laws in Mason City with elected officials. Had the basis for Plaintiff's claims been discussions with Chief Anderson instead of Bowers, Francis, and Lowe, perhaps Kubiak would have required this Court to grant Defendants summary judgment. However, without facts indicating that Plaintiff's job required him to address citizen complaints about his job performance and the need to enforce the DUI laws with elected officials, the Court finds that Plaintiff's April 2017 statements to Bowers and Francis and Plaintiff's June 2017 statements to Lowe were made as a private citizen. See Kristofek, 832 F.3d at 793-94 (holding that a police officer's statements to the Federal Bureau of

Investigation about possible police corruption were made as a private citizen).

> ### 2. *Plaintiff's April 2017 and June 2017 Statements Addressed a Matter of Public Concern.*

Even if a public employee's speech is made as a private citizen, the speech must also involve a matter of public concern to be protected under the First Amendment. Id. at 794. Whether speech addresses a matter of public concern is a question of law. Bivens v. Trent, 591 F.3d 555, 560 (7th Cir. 2010). "The Supreme Court has defined 'public concern' to mean 'legitimate news interest,' or 'a subject of general interest and of value and concern to the public at the time of publication.'" Kubiak, 810 F.3d at 482.

Whether a public employee's statement addresses a matter of public concern "must be determined by the content, form, and context of a given statement." Connick v. Myers, 461 U.S. 138, 147–48 (1983). Of these three factors, content is the most important. Kubiak, 810 F.3d at 483. "The motive of the speaker is relevant as part of the context in which the speech was made but is not dispositive." Id. The fact that "a speaker was partly motivated by personal concerns does not necessarily mean the speech cannot

also be a matter of public concern." Bivens, 591 F.3d at 561; see also Kristofek v. Vill. of Orland Hills, 712 F.3d 979, 986 (7th Cir. 2013) ("[I]f an objective of the speech was also to bring about change with public ramifications extending beyond the personal, then the speech does involve a matter of public concern."). However, "if the speech concerns a subject of public interest, but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern." Bivens, 591 F.3d at 561.

Applying these principles to the facts construed in the light most favorable to Plaintiff, the Court concludes that Plaintiff's statements to Francis and Bowers in April 2017 and Plaintiff's statements to Lowe in June 2017 addressed a matter of public concern. Statements relating to the enforcement of DUI laws touch upon a matter of public interest. See Auriemma v. Rice, 910 F.2d 1449, 1460 (7th Cir. 1990) (en banc) ("It would be difficult to find a matter of greater public concern in a large metropolitan area than police protection and public safety."). "However, when analyzing the content of the speech, the broad subject matter is not

determinative," and courts must instead focus on the particular content of the speech.  <u>Kubiak</u>, 810 F.3d at 483.

The content, form, and context of Plaintiff's statements to Francis and Bowers in April 2017 establish that the statements were made, at least in part, in an attempt to protect the public by ensuring that DUI laws would be enforced in Mason City.  After relaying information about the incident involving Darren Smith to Francis and Bowers, Plaintiff informed Francis and Bowers that Plaintiff was just trying to do his job, a job that Plaintiff was doing well.  Importantly, Plaintiff commented that he knew how to do his job in a way that protected the public.  Plaintiff also stated that he was doing the right thing and asked Francis and Bowers to stand behind Plaintiff.

Although it appears that Plaintiff's statements were also made to get Francis and Bowers to publicly support Plaintiff and help Plaintiff avoid future incidents involving Mason City bar owners or residents, that fact does not defeat Plaintiff's claim.  Speech involves a matter of public concern if "an objective of the speech was also to bring about change with public ramifications extending beyond the personal."  <u>Kristofek</u>, 712 F.3d at 986.

The form of Plaintiff's April 2017 statements also supports the Court's finding that those statements addressed a matter of public concern. Plaintiff's comments were made to Francis and Bowers, two elected officials, after a meeting of the City Council or the City Council's Police Committee. The fact that Plaintiff did not instead take the issue up with his superiors at the Mason City Police Department suggests that Plaintiff's statements addressed a matter of public concern. See Kubiak, 810 F.3d at 483. The fact that Plaintiff's conversation with Francis and Bowers was private "does not necessarily signify that the speech is of private rather than public concern." Smith v. Fruin, 28 F.3d 646, 652 (7th Cir. 1994).

Lastly, the context of Plaintiff's April 2017 statements shows that the statements were made on a matter of public concern. Plaintiff's meeting with Francis and Bowers occurred after several incidents where Plaintiff's ability to keep the public safe by enforcing the DUI laws was compromised due to interference from Mason City bar owners. Therefore, the timing of the meeting suggests that Plaintiff was hoping to have Francis and Bowers help Plaintiff keep the public safe by making sure that the DUI laws were properly enforced.

In sum, the content, form, and context of Plaintiff's statements to Francis and Bowers in April 2017 show that those statements addressed a matter of public concern. Therefore, the statements are protected under the First Amendment.

The Court reaches the same conclusion with respect to Plaintiff's statements to Lowe in June 2017. These statements, like Plaintiff's April 2017 statements to Francis and Bowers, were made to an elected official, not Plaintiff's superiors at the Mason City Police Department. As for the content of the June 2017 statements, Plaintiff told Lowe that Lowe needed to do a better job informing the public that police officers enforce the law to keep the community safe. In response to Lowe's comment about keeping the local bar owners happy because of the revenue the bars generate, Plaintiff stated that the safety of the public could not sacrificed due to political concerns.

Plaintiff's request that Lowe inform the public that police officers aim to make a community safer by enforcing the law could be viewed as another attempt by Plaintiff to have an elected official make Plaintiff's job easier by placating the individuals who had been interfering with Plaintiff's official duties. However, Plaintiff's

response to Lowe about the importance of public safety within the context of DUI enforcement indicates that Plaintiff's statements to Lowe were on a matter of public concern.  See Kristofek v. Vill. of Orland Hills, 712 F.3d 979, 986 (7th Cir. 2013) ("[I]f an objective of the speech was also to bring about change with public ramifications extending beyond the personal, then the speech does involve a matter of public concern.").  This holding finds further support in the fact that Plaintiff's motive in speaking to Lowe in June 2017 was to educate Lowe about the role of police officers.

> 3.    *Plaintiff's Interests in Making the April 2017 and June 2017 Statements Outweigh the Interests of His Former Employer.*

Even if a public employee speaks as a private citizen on a matter of public concern, the speech is afforded protection under the First Amendment only if the employee's "interest, as a citizen, in commenting upon matters of public concern outweighs the police department's interest, as an employer, in promoting the efficiency of the public services it performs through its employees."  Kristofek, 832 F.3d at 795 (internal quotation marks omitted).  Factors the Court must consider in balancing the free-speech interests of a public employee and an employer's management interests include:

(1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking; and (7) whether the speaker should be regarded as a member of the general public.

Id. at 795-96. "With respect to the first two factors, the disruptive nature of an employee's speech is so important in the context of law enforcement that a government employer is allowed to consider both the actual *and* the potential disruptiveness." Id. at 796.

Defendants do not argue that Plaintiff's free-speech interests in making statements related to public safety to Francis and Bowers in April 2017 and to Lowe in June 2017 are outweighed by the Mason City Police Department's interests in promoting the efficiency of the public services it provides. The Court finds no reason to find that the balancing of the two interests favors the latter. Plaintiff made statements to elected officials outside the Department about the need to put public safety above politics through enforcement of the DUI laws. Plaintiff's statements did not impede his ability to do his job. While Plaintiff's fellow officers may

not have seen the need to enforce the DUI laws as strenuously as Plaintiff did, there is no evidence that Plaintiff's statements impacted, or had the potential to impact, any other officer's ability to do his or her job. And although Assistant Chief Williams instructed Plaintiff to cut back his enforcement of the DUI laws, Plaintiff's statements to Francis, Bowers, and Lowe did not contravene that order.

Plaintiff's interests in speaking to Francis and Bowers in April 2017 and to Lowe in June 2017 outweigh the interests of the Department in promoting the efficiency of the of the public services it performs. Therefore, those statements are protected under the First Amendment. However, before Plaintiff can defeat Defendants' request for summary judgment, Plaintiff must show a triable issue on whether Plaintiff's statements were a cause of his termination. See Bivens, 591 F.3d at 559.

**B.      Whether Plaintiff's April 2017 Statements to Alderman Francis and Mayor Bowers and June 2017 Statements to Mayor Lowe Were a Cause of Plaintiff's Termination Is a Question for the Trier of Fact.**

A plaintiff who brings a First Amendment retaliation claim pursuant to § 1983 bears the initial burden of demonstrating that

his speech "was a substantial or motivating factor in the defendant's action against him." Consolino v. Towne, 872 F.3d 825, 829 (7th Cir. 2017). If a plaintiff produces evidence that his speech was at least a motivating factor of the defendant's retaliation, the burden shifts to the defendant to rebut "the causal inference raised by the plaintiff's evidence." Kidwell v. Eisenhauer, 679 F.3d 957, 965 (7th Cir. 2012). The defendant can meet its burden by showing that the same action would have been taken in the absence of the employee's protected speech." Hutchins v. Clarke, 661 F.3d 947, 955 (7th Cir. 2011). If the defendant meets its burden, the burden shifts back to the plaintiff to provide evidence that the defendant's "proffered reason was pretextual and that the real reason was retaliatory animus." Id.; Thayer v. Chiczewski, 705 F.3d 237, 252 (7th Cir. 2012) ("[A] plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie.").

"On summary judgment, of course, the plaintiff's burden is simply to demonstrate that there is a genuine issue of material fact on the question of causation." Yahnke v. Kane County, Illinois, 823 F.3d 1066, 1071 (7th Cir. 2016). Defendants offer multiple

arguments regarding causation in support of their request for summary judgment.

Defendants assert that Plaintiff was terminated due to budget issues, not Plaintiff's statements to Francis, Bowers, and Lowe. According to Defendants, Mason City had significant budget concerns in June 2017 and that the City Council had to consider whether the Mason City Police Department had five full-time police officers or four full-time officers who were properly equipped. Defendants also allege that eliminating Plaintiff's position has saved the City money and that making Chief Anderson a "working chief" has made the Department more efficient.

Plaintiff disputes these factual assertions, relying on Chief Anderson's representation about the amount being spent on police salaries since Plaintiff's termination being equal to or higher than the amount spent prior to the termination, statements made during the executive session of the Police Committee on May 18, 2017, about Plaintiff and his enforcement of DUI laws, and the fact that Chief Anderson's predecessor was a "working chief." Further, although Defendants note that the balance of the Mason City general fund fell each month from December 2016 to June 2017,

the balance of the general fund increased significantly by the end of July 2017 after a disbursement by the County Treasurer. Given these facts, a jury could reasonably conclude that budgetary concerns were not the sole cause of Plaintiff's termination.

Defendants' fallback argument is that, even if Plaintiff establishes a genuine dispute as to whether he was terminated due to his enforcement of DUI laws, Plaintiff's § 1983 claims fail because those actions are not protected under the First Amendment. There is certainly evidence that Plaintiff's enforcement of the DUI laws was a cause of his termination. Indeed, the members of the Police Committee discussed terminating Plaintiff's employment and the effects and potential effects of Plaintiff's enforcement of the DUI laws in May 2017.

However, there is also evidence suggesting that Plaintiff's statements to Francis, Bowers, and Lowe were a cause of Plaintiff's termination. During Plaintiff's conversation with Lowe in June 2017, Lowe told Plaintiff that the bar owners in Mason City needed to be kept happy because the bars generate a lot of revenue for the City. Plaintiff's response was to chastise Lowe, telling Lowe that putting the public's safety at risk for political reasons was not an

option. Elected officials had received complaints from Mason City residents and bar owners about Plaintiff's enforcement of Illinois' DUI laws. In April 2017, just days after Plaintiff complained to Francis and Bowers about the actions of a bar owner, Plaintiff was informed that he needed to back off his enforcement of those laws due to complaints. A reasonable jury could view Plaintiff's June 2017 statements to Lowe as an act of defiance—statements indicating that Plaintiff would continue to enforce the DUI laws regardless of the wishes of Lowe and Plaintiff's superiors in the Department. At the time of Plaintiff's termination, Plaintiff's statements to Francis and Bowers could have been viewed in the same light. A reasonable jury could further conclude that Plaintiff's stated refusal to "play ball" played a part in his termination, an action taken by aldermen who were aware of the complaints about Plaintiff.

Further, the City Council voted to terminate Plaintiff's employment as an officer with the Mason City Police Department just one week after Plaintiff spoke to Lowe in June 2017. This timing suggests that Plaintiff's June 2017 statements were a cause of his termination. See Scott v. Sunrise Healthcare Corp., 195 F.3d

938, 941 (7th Cir. 1999) ("[A] showing that the adverse employment action occurred on the heels of the protected activity is indirect evidence of retaliation."). In addition, around the time of Plaintiff's conversation with Lowe, Lowe told Chief Anderson that Mason City would continue to have five full-time police officers, which left Chief Anderson with the impression that Plaintiff would not be fired. Given these facts, a jury could reasonably conclude that Plaintiff's statements to Francis and Bowers in April 2017 and Plaintiff's statements to Lowe in June 2017 factored into the decision to terminate Plaintiff's employment with the Department.

Defendants Dodson and Miller raise an additional argument related to causation—that Plaintiff's claims against them fail because Plaintiff has not shown that they had knowledge of Plaintiff's April 2017 statements to Francis and Bowers or Plaintiff's June 2017 statements to Lowe. However, for purposes of summary judgment, Plaintiff need not prove that Dodson and Miller had knowledge of Plaintiff's statements to Francis, Bowers, and Lowe. See id. Indeed, summary judgment would be improper if a reasonable juror could infer that Dodson and Miller had knowledge of Plaintiff's statements. See id.

Here, Aldermen Dodson and Miller shared a working relationship with Alderman Francis and Mayor Lowe as elected officials in Mason City. All four men were members of the City Council's Police Committee. Plaintiff was a subject of discussion at the Police Committee's executive session in May 2017, a meeting at which Lowe, Francis, Dodson, and Miller were all present. These facts are enough to create a triable issue of fact as to whether Dodson and Miller knew of Plaintiff's April 2017 statements to Francis and Bowers and Plaintiff's June 2017 statements to Lowe.

In conclusion, Plaintiff was speaking as a private citizen both in April 2017 when he spoke to Bowers and Francis and in June 2017 when he spoke to Lowe. Plaintiff's statements to Francis, Bowers, and Lowe were made on a matter of public concern, and Plaintiff's interests in making those statements are not outweighed by the interests of the Mason City Police Department. Therefore, the statements are protected under the First Amendment. Plaintiff has set forth facts upon which a reasonable jury could rely in finding that Plaintiff's protected speech was a motivating factor in the decision to terminate his employment as an officer with the Mason City Police Department. Therefore, Defendants' request for

summary judgment based on the argument that Plaintiff cannot establish the elements of his § 1983 First Amendment retaliation claims must be denied. However, Defendants Lowe, Francis, Dodson, and Miller raise additional arguments in favor of summary judgment. The Court addresses these arguments below.

## C. Defendant Bruce Lowe Is Entitled to Summary Judgment on Plaintiff's § 1983 Claim.

Defendant Lowe argues that he is entitled to summary judgment because he did not participate in the vote to terminate Plaintiff's employment as an officer with the Mason City Police Department. Plaintiff's response is that Lowe is liable because, at the May 2017 executive session of the Police Committee, Lowe urged the members of the Committee to keep quiet about their desire to fire Plaintiff based on non-budgetary concerns.

Plaintiff cites Vance v. Peters, 97 F.3d 987 (7th Cir. 1996), as support for his argument. Although Plaintiff does not explain how Vance aids his argument, the Court presumes that Plaintiff is relying on the proposition that a state actor can be held liable under § 1983 if the constitutional deprivation occurs at the actor's

direction or with his knowledge and consent.  See <u>Vance</u>, 97 F.3d at 993.  Plaintiff's reliance on <u>Vance</u> is misplaced, however.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."  <u>Id.</u> at 991.  True, as Plaintiff points out, a state actor can be liable under § 1983 even if the actor did not directly cause the constitutional deprivation but instead merely facilitated, condoned, approved, or turned a blind eye to the violative conduct.  <u>Id.</u> at 993.  However, this theory of liability is limited to those who have supervisory authority over the actors who directly caused the constitutional deprivation.  See <u>Nanda v. Moss</u>, 412 F.3d 836, 842 (7th Cir. 2005) ("Under § 1983, however, <u>supervisory</u> liability can be established if the conduct causing the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent.") (emphasis added); <u>Vance</u>, 97 F.3d at 993 ("[A] <u>supervising</u> prison official cannot incur § 1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right.") (emphasis added).

Here, Plaintiff has advanced no evidence that Mayor Lowe had supervisory authority over Francis, Dodson, or Miller such that Lowe could have prevented them from voting to terminate Plaintiff's employment at the City Council meeting on June 19, 2017. Therefore, because Lowe did not participate in the vote to terminate Plaintiff's employment, Lowe is not liable to Plaintiff under § 1983 and is entitled to summary judgment.

### D.  Defendants Francis, Dodson, and Miller Are Not Entitled to Qualified Immunity.

"The affirmative defense of qualified immunity protects government officers from liability for actions taken in the course of their official duties if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hardaway v. Meyerhoff, 734 F.3d 740, 743 (7th Cir. 2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Because the focus is on whether the official had fair notice that his conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (per curiam).

The two-prong test used to determine if qualified immunity applies requires the Court to determine "(1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the [defendant] violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred." Hardaway, 734 F.3d at 743 (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)). The Court has discretion to begin its analysis with either prong. See Novoselsky v. Brown, 822 F.3d 342, 354 (7th Cir. 2016) (citing Pearson, 555 U.S. at 236).

As explained above, Plaintiff has set forth facts upon which a reasonable jury could conclude that Defendants Francis, Dodson, and Miller violated Plaintiff's First Amendment rights by terminating his employment with the Mason City Police Department as a result of Plaintiff's protected statements to Bowers and Francis in April 2017 and to Lowe in June 2017. Therefore, qualified immunity shields Francis, Dodson, and Miller from liability only if the constitutional right they are alleged to have violated was not clearly established in June 2017 when Plaintiff was fired.

"To be 'clearly established,' a right must be defined so clearly that every reasonable official would have understood that what he

was doing violated that right." <u>Dibble v. Quinn</u>, 793 F.3d 803, 808 (7th Cir. 2015). "The right allegedly violated must be established not as a broad general proposition but in a particularized sense so that the contours of the right are clear to a reasonable official." <u>Id.</u> (internal quotation marks omitted); <u>see</u> <u>also</u> <u>White v. Pauly</u>, 137 S. Ct. 548, 552 (2017) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742 (2011)) (reiterating that "'clearly established law' should not be defined 'at a high level of generality'").

The plaintiff bears the burden of showing that the constitutional right at issue was clearly established. <u>Doe v. Vill. of Arlington Heights</u>, 782 F.3d 911, 915 (7th Cir. 2015). To meet this burden, the plaintiff must establish that the alleged misconduct was an obvious violation of a constitutional right or that a court has upheld the purported right in a factually similar case. <u>Id.</u> In some circumstances, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." <u>Kristofek</u>, 832 F.3d at 798 (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002)). Previous cases need not be "fundamentally similar" or "on all fours" with the present facts before defendants will be held to know that their conduct was

unlawful.  McGreal v. Ostrov, 368 F.3d 657, 683 (7th Cir. 2004)

(citing Hope, 536 U.S. at 741).

Francis, Dodson, and Miller argue that they are entitled to

qualified immunity.  They contend that Plaintiff cannot point to any

case with facts fundamentally similar to the facts in this case that

would have informed them that voting to terminate Plaintiff because

of Plaintiff's statements to Francis and Bowers in April 2017 and to

Lowe in June 2017 violated the First Amendment.  However,

Plaintiff need not provide a case "on all fours" with this case to

avoid a finding that Francis, Dodson, and Miller are entitled to

qualified immunity.  See McGreal, 368 F.3d at 683.

Plaintiff, having had several altercations with Mason City

residents on account of Plaintiff's enforcement of the DUI laws, met

with Francis and Bowers in April 2017 and discussed the need for

their public support of Plaintiff as a police officer working to keep

the public safe.  Plaintiff subsequently met with Lowe in June 2017

and discussed the importance of enforcing the DUI laws.  When

Lowe responded that the Mason City bar owners needed to be kept

happy because the bars generate revenue for the City, Plaintiff

disagreed, stating that politics could not come at a risk to the safety

of the public.  Through these conversations with Francis, Bowers, and Lowe, Plaintiff was seeking to ensure that the public was protected by having the DUI laws enforced in Mason City with the support of the City's elected officials.  At the time Francis, Dodson, and Miller terminated Plaintiff's employment, they were on sufficient notice that a police officer speaking to individuals outside his department about a matter of public safety was engaging in constitutionally protected speech.  See Kristofek, 832 F.3d at 793 (holding that a police officer was speaking as a private citizen in informing the Federal Bureau of Investigation about possible police corruption); Gustafson v. Jones, 290 F.3d 895, 907-08 (7th Cir. 2002) (holding that police officers' statements about "how police investigations are to be conducted" were made on a matter of public concern).

Plaintiff has met his burden in showing that the constitutional right that Defendants Francis, Dodson, and Miller are alleged to have violated was clearly established at the time of Plaintiff's termination on June 19, 2017.  Francis, Dodson, and Miller are not entitled to qualified immunity on Plaintiff's First Amendment retaliation claims.

**E. Mason City Is Not Entitled to Summary Judgment on Plaintiff's State Law Claim for Retaliatory Discharge.**

To prove a valid retaliatory discharge claim under Illinois law, an employee must show that (1) the employer discharged the employee, (2) the discharge was retaliation for the employee's activities, and (3) the discharge violates a clear mandate of public policy. Turner v. Mem'l Med. Ctr., 911 N.E.2d 369, 374 (Ill. 2009). The City, in arguing that it is entitled to summary judgment on Plaintiff's state law claim, assumes that the claim is based solely on Plaintiff's statements to Mason City's elected officials. However, Plaintiff's claim of retaliatory discharge under Illinois law is based on his actions enforcing Illinois' DUI laws. Complaint (d/e 1), ¶61.

As noted above, Plaintiff has set forth facts upon which a reasonable jury could conclude that his employment with the Mason City Police Department was terminated, in part, because of Plaintiff's enforcement of DUI laws. Further, terminating a police officer for enforcing DUI laws violates a clear mandate of Illinois public policy. See Palmateer v. Int'l Harvester Co., 421 N.E.2d 876, 879 (Ill. 1981) ("There is no public policy more basic, nothing more implicit in the concept of ordered liberty than the enforcement of a

State's criminal code.  There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens.") (citations omitted).  The City is not entitled to summary judgment on Plaintiff's state law claim for retaliatory discharge.

## VI. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (d/e 71) is GRANTED IN PART and DENIED IN PART.  Plaintiff's § 1983 claim against Defendant Bruce Lowe is DISMISSED WITH PREJUDICE.  The Clerk is DIRECTED to terminate Bruce Lowe as a party to this case.  All other claims remain pending.

ENTER:  March 27, 2020

*/s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE